No. 532

First Circuit

VALLEY SECURITIES CO., INC., v. DOUCET

CORMIER, Intervener

(December 30, 1929. Opinion and Decree.)

Sandoz & Sandoz, and Dubuisson, Perrault & Burleigh, of Opelousas, attorneys for plaintiff, appellee.

L. Austin Fontenot, of Opelousas, attorney for intervener, appellant.

LECHE, J. Plaintiff is the holder and owner of a judgment against Daly J. Doucet, defendant, founded on a claim for balance due by Doucet on one Essex automobile. It caused execution to issue, the Essex automobile was sold, but from the sale only a small portion of the judgment was realized, and there remained due to the plaintiff several hundred dollars. In order to satisfy the balance due on its judgment, plaintiff secured an alias writ of execution and seized another automobile, a Buick roadster, which apparently belonged to Doucet. This last seizure was opposed by J. Collins Cormier, who has intervened, and who claims to be the owner of the Buick roadster automobile. The district court held that Cormier's title was simulated and maintained the seizure as being that of property belonging to Doucet. Cormier has appealed.

The controversy is then narrowed down to the question of ownership of the Buick roadster automobile, or as to whether a sale of the Buick roadster made by Doucet to Cormier, within an hour or two before the time of the seizure, is valid as having been made in good faith.

The salient facts are that Doucet came to the city of Opelousas about eight o'clock in the morning and parked his automobile around the Red Top filling station. That station had been operated by Cormier, but at the time of this occurrence, was being conducted by someone else. Doucet ordered that his automobile be washed. Cormier, who conducted an automobile sales room in the same or adjoining building, soon thereafter arrived from his home near Port Barre, and within a few moments Doucet engaged in negotiation with him at once for the sale of his Buick roadster. An agreement was soon entered into by the parties and the sale was promptly written and signed.

Doucet knew that the sheriff held a writ for the seizure of his automobile. He even told the sheriff that he had loaned the automobile to someone and that the borrower had gone out of town to Ville Platte with it. There is no doubt, according to the testimony in the record, that Doucet was bent on circumventing the seizure and this accounts for the rapidity with which he transacted the sale. He misled the sheriff as to the location of the automobile and by that means delayed the seizure until about one o'clock in the afternoon, when Cormier then claimed that he was owner by virtue of the sale made to him by Doucet about nine o'clock in the morning.

Cormier and Doucet are old acquaintances. Doucet says about himself that he is engaged in selling slot machines, works around some store, operates pianos and in the summer time promotes fighting in Lafayette. He says further that he had bought the Buick roadster about two months before, for $1275. He acknowledges that he came to town, to Opelousas, with a view of selling his automobile to Cormier and that he would sell it cheap or at a bargain.

Cormier, it is admitted, is in part engaged in selling new automobiles and does not buy second-hand cars, except to the extent that he might accept a second-hand car as part payment for a new one.

It is remarkable how the parties to this sale went through all the forms whether necessary or not necessary, to evidence such a contract. The sale purports to have been made for cash. They secured the services of a notary public, and the purchaser drew his check in favor of the seller for the purchase price, viz: $816.

The vendor went to the bank, secured the money which was by him brought to the place where the act was passed. The purchaser accepted as true a statement from the seller that there was a lien or chattel mortgage on the car for $216. The seller then took out of the money received from the bank in payment of the auto, $216, which he handed back to the purchaser and told him to use this amount to satisfy the lien on the automobile.

Delivery of the automobile was equally as formal as the manner in which the sale was made. Cormier says that he put his foot on the running board, took out an envelope from his pocket, took down the number of the motor and announced to the persons present, "It is my car."

It is extremely difficult sometimes to expose simulated contracts. Persons who engage in such transactions are careful to surround them with all the indications that may impress third persons with their reality and this overcare on their part is often subversive of the purpose for which it is exercised. The credibility of the actors who go through the forms ·of simulated contracts is also an element which has a determinative effect· on the conclusions reached by the courts. The trial judge was of the opinion that the sale from Doucet to Cormier is a bare simulation. There are many circumstances that seem to confirm the correctness of his finding. He knows the parties and their witnesses and it would be unjustifiable on our part to reverse his judgment.

Judgment of the district court is affirmed.